SIOUX CITY & ST. PAUL RAILROAD COMPANY & Others *v.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* SIOUX CITY & ST. PAUL RAILROAD COMPANY & Others.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF IOWA.

Argued March 16, 1886.—Decided March 29, 1886.

The title of the railroad companies within the ten-mile limit to lands granted by Congress to Iowa by the act of May 12, 1864, 13 Stat. 72, relates back to the date of the grant, and where two roads cross each other they take such granted lands in equal moieties; but the title to indemnity or lieu lands outside that limit is acquired by priority of selection, approved by the Secretary of the Interior.

The case is stated in the opinion of the court.

*Mr. John W. Cary* for the Chicago, Milwaukee & St. Paul Railway Company.

*Mr. John C. Spooner* and *Mr. J. C. Swan* for the Sioux City & St. Paul Railroad Company & Others submitted on their brief.

Mr. JUSTICE MILLER delivered the opinion of the court.

These are cross-appeals from a decree of the Circuit Court for the District of Iowa.

In that court the Chicago, Milwaukee and St. Paul Railway Company brought its bill in chancery on the 4th day of March, 1879, against the Sioux City and St. Paul Railroad Company, which in due time was answered.

The subject of contest in this suit was the right to certain lands granted by Congress to the State of Iowa to aid in building two railroads, whose right to the lands became vested in one or both of these companies, however named originally. The grant of the lands was by a single statute, and was to the

State as a trust for the construction of two roads which necessarily crossed each other, and by the act of Congress the place of crossing was to be in O'Brien County. The act granted for the aid of each road every alternate section of land designated by odd numbers for ten sections in width on each side of said roads, and in the event that any of these odd sections had, when the lines of the roads were definitely located, been sold or otherwise disposed of, the usual grant of lands in lieu of them should, by the Secretary of the Interior, be caused to be selected, provided they were in no case to be located more than twenty miles from the lines of the roads. 13 Stat. 72, ch. 84.

The roads to be benefited by this grant have both been completed, and both companies are entitled to the odd sections within ten miles of their lines of road, and to the indemnity lands, so far as they can be found of odd numbers within twenty miles. But as the roads cross each other these limits also cross and overlap, and the claims to the odd sections within those limits necessarily conflict. This presents questions which, at the time the suit was brought, were important, because the value of the land in controversy is large, and because many other land grants to railroad companies presented the same difficulty. But during the pendency of this suit in the Circuit Court, and on appeal here, all these questions have, it is believed, been decided by this court, so that nothing remains but to apply the principles of these decisions to the admitted facts of this case. *Cedar Rapids Co.* v. *Herring,* 110 U. S. 27; *Kansas Pacific Co.* v. *Atchison, Topeka & Santa Fé Co.,* 112 U. S. 414; *Sioux City & St. Paul Co.* v. *Winona Co.,* 112 U. S. 720.

1. It was claimed by the Chicago, Milwaukee and St. Paul Company, which, for brevity, will be called the Milwaukee Company, that, by reason of the prior location of the line of its road through the lands where the crossing finally took place, they acquired a priority for their entire claim to the exclusion of the other company within the limits of the lap. That is, that when their line was definitely located they became immediately entitled to every odd section within ten miles of the road and to the paramount right of selection of indemnity lands within twenty miles.

2. The Sioux City road asserted, by virtue of the fact of the *prior construction* of their road through the overlapping lines of the grant, that they had secured the paramount right which the other company claimed by reason of prior location.

Both these contentions are wrong. The title acquired from the United States relates back to the date of the grant, and neither company can obtain any superiority of title by any act done by it or by any omission to act by the other, provided there is no forfeiture of the grant. This principle is fully decided in the case of *Sioux City & St. Paul Railroad Co.* v. *Winona & St. Peter Railroad Co.*, 112 U. S. 720. In such case the companies take the lands coming within the conflicting lines in equal undivided moieties.

In the opinion above referred to it was held that, while this rule applied to what are called lands in place, that is, those odd sections found within the ten-mile limit of the road, as those ten miles conflicted with each other, it did not apply to lieu lands or indemnity lands which were to be *selected* outside of the ten-mile limit. The reason of this was said to be that, with regard to the odd sections found within the original limits of the grant undisposed of when the line of the road was definitely located, that location ascertained the sections which passed by the grant and fixed the right to such sections, whether it was the whole or the moiety of them.

But no title to indemnity lands was vested until a selection was made by which they were pointed out and ascertained, and the selection made approved by the Secretary of the Interior. In a case, therefore, where two companies had this right of selection within the same limits, priority of title might be created by priority of selection, or some other mode than location of the road or priority of construction.

The Circuit Court, in its decree, disregarded this distinction between lands found in place within ten miles of each road and those within the indemnity limits, and applied the tenancy in common principle to the lands claimed as indemnity for others not found within the ten miles, as well as to those found within those limits and not sold or disposed of.

It appears from the record in this case, that there are within

the lap of the twenty mile limits of both roads, subject to the grants to these roads, both for lands in place and for lieu or indemnity lands, $189,595\frac{98}{100}$ acres which constituted the subject matter of this controversy.

1. Of these, $63,796\frac{24}{100}$ acres are within the ten mile limit of the Sioux City road, and *not* within the ten mile limit of the Milwaukee road, though they are within its twenty mile limit. The result of the rule on which the Circuit Court acted was to divide these lands equally between the two companies.

But the principles we have stated, and which were fully considered in *The St. Paul Company* v. *The Winona Company*, exclude the Milwaukee Company in this case from invading the ten mile limit of the Sioux City road to seek indemnity for losses by reason of lands within its own ten mile limit previously disposed of. This $63,796\frac{24}{100}$ acres being odd sections within the ten mile limit of the Sioux City road, and not within the ten mile limit of the Milwaukee road, belonged exclusively to the former, and the latter company had no interest in them. The decree is in that respect erroneous and must be reversed, and all these lands given to the Sioux City Company.

2. Of the lands in controversy there were $33,071\frac{18}{100}$ acres within the ten mile limit of the Milwaukee road, and *not* within the ten mile limit of the Sioux City road, but within its twenty mile limit, which, according to the ruling of the Circuit Court, were equally divided between the two companies. For the same reasons which govern with regard to the $63,796\frac{24}{100}$ acres just disposed of, this part of the decree must be reversed and these $33,071\frac{18}{100}$ acres given to the Milwaukee Company.

3. Of the lands in controversy there were $50,539\frac{73}{100}$ acres within the ten mile limits of both roads. This the decree of the Circuit Court held to belong to the companies in equal undivided moieties, and appointed commissioners to make partition of them. This part of the decree was upon the principles we have stated correct, and must be affirmed.

4. There remains to be considered $42,188\frac{93}{100}$ acres found to be within the twenty mile or indemnity limit of both roads, and not within the ten mile or absolute grant limit of either road. As these lands are within the category of those to which no

title accrued until a *selection* of them was made for one road or the other, there might arise some difficulty about priority of right between the two companies. But we are of opinion that the circumstances in which the title to these lands has been placed by the action of the State of Iowa, which was a trustee in the matter for both parties, and of the Commissioner of the General Land Office, the decree of the court dividing these lands equally between the parties was just.

So far as any selection was made of these lands it was by the State of Iowa, and the legal title was conveyed to her. Though they were certified to her by the Secretary of the Interior for the benefit of the Sioux City Company, and though the State conveyed them to that company, it is obvious that both the Secretary of the Interior and the Governor of Iowa acted under the mistaken idea that the earlier construction of its road or its earlier location by the Sioux City Company gave it a priority of right in these indemnity lands, and as there was not enough to satisfy the demands of both companies, nor, indeed, of either of them, they, for that reason, conveyed them all to the Sioux City Company. We think the action of the Secretary of the Interior, and of the Governor of Iowa, under this mistake of law and of their powers, and especially the Governor of Iowa, the common trustee of both these companies, cannot have the effect of destroying the rights of the parties. There was in fact no selection. All were wrongfully conveyed to the Sioux City Company.

That part of the decree, therefore, which divides these lands equally and directs the commissioners to make partition of them is also affirmed.

*As both parties appealed from the decree of the Circuit Court, and as each of them has succeeded in obtaining a reversal of an important part of the decree, the costs of the appeal will be equally divided between them, and the case remanded to the Circuit Court, with instruction to render a decree in conformity with this opinion.*