Sioux City & St. Paul Railroad Company, Appellant, v. Lewis Countryman, Appellee.

The Same v. Adam Phillips, Appellee.

The Same v. Bazel D. Battin, Appellee.

The Same v. Washington Royer, Appellee.

1.   Railroad Land Grant: CONDITIONS: PERFORMANCE: CONSTRUC-
TION.   By an act of congress approved in May, 1864, the United States granted to the state of Iowa to aid in the construction of a railroad from Sioux City to the south line of the state of Minnesota, and also for the use and benefit of the McGregor Western Railroad Company to aid in the construction of a railroad from South McGregor in a westerly direction until it should intersect the said railroad running from Sioux City to the Minnesota line, every alternate section of land designated by odd numbers for ten sections in width on each side of said roads.   Patents for one hundred sections of said lands were to be issued to the railroad companies whenever the governor of the state should certify to the secretary of the interior that any section of ten consecutive miles of either of said roads was completed, and likewise upon the completion of each succeeding section of ten consecutive miles of road until its completion, when the whole of said land should be patented to the state for the purposes aforesaid.   If, however, said roads were not completed within ten years from the time of their acceptance of the grant, the lands thereby granted and not patented were to revert to the state for the purpose of securing the completion of said roads, and should the state fail to complete said roads within five years thereafter the lands undisposed

of as aforesaid were to revert to the United States. The state accepted the grant, and conferred the lands and interests granted upon the plaintiff; and in September, 1866, the plaintiff accepted the grant from the state. Before the close of 1872 the plaintiff completed a railway from a point on the south line of Minnesota to the town of LeMars, a distance of fifty-six and a quarter miles, and about two miles of main and side track in Sioux City. It also built in the latter place a roundhouse, machine and car shops, and other buildings, but never constructed a road from LeMars to Sioux City. It has operated trains, however, between those points over the track of another railroad. Patents were issued by the United States to the state of Iowa for an aggregate of about four hundred and seven thousand, eight hundred and seventy acres of land as inuring under the grant to the plaintiff, including the lands in controversy, and in pursuance of an act of the state legislature certificates have been issued to the plaintiff for three hundred and twenty-two thousand, four hundred and twelve, and eighty-one-hundredths acres, but not including the lands in controversy. Of the lands so certified to the plaintiff, forty-one thousand, six hundred and eighty-seven, and fifty-two-hundredths acres were by the decree of the federal court awarded to the Chicago, Milwaukee & St. Paul Railway Company, which claimed said lands under the same act of congress. In the year 1882, the state resumed the lands which had been conferred upon the plaintiff by said act of congress, and which had not been earned, and two years later it relinquished and conveyed the lands and rights resumed by the act of 1882 to the United States. In the year 1887 the governor certified to the secretary of the interior, in accordance with the requirements of the act last mentioned, a list of about twenty-six thousand acres of land, including that in controversy. The lands so certified were restored to entry under the settlement laws of the United States in August, 1887, and the defendants claim certain portions thereof under the homestead and pre-emption entries. The plaintiff having brought this action to quiet its title to the lands thus entered, based upon said act of congress and the grant from the state, _held_, that the grant from the state to the plaintiff was necessarily limited by the conditions imposed by the act of congress, and that the right remained in the state to resume control of all lands not earned by the plaintiff within ten years from the acceptance of the grant, although such right was not specifically reserved by the state, and that the state had properly relinquished its title to the United States.

2. ——: ——: ——: ——. The plaintiff having failed to complete its road to Sioux City as provided by said act of congress, and until completion being entitled only to land for each completed section of ten consecutive miles of road built, _held_, that it was not entitled to the lands in controversy on account of the last six and a quarter miles of road constructed on its line to LeMars, nor for the part of the road and improvements built in Sioux City. Neither

could the plaintiff claim said lands as a part of the indemnity lands, which it had earned by the construction of the fifty miles of road, upon the ground that the award of a portion of said lands to the Chicago, Milwaukee & St. Paul Railway Company was a sale or appropriation within the meaning of a provision of said act of congress that, if it should appear that the United States had sold any part of the lands granted by said act, or that they had been reserved by the United States for any purpose whatever, then the secretary of the interior should cause to be selected other lands in lieu thereof.

*Appeals from Woodbury District Court.*—Hon. George W. Wakefield, Judge.

Monday, June 1, 1891.

Each of these actions involves the title to a quarter section of land claimed by the plaintiff under a railroad grant, and by the defendant by virtue of an entry made under the laws of the United States. The plaintiff asks that the entries be vacated, that the defendants be enjoined from attempting to acquire title by virtue of their entries, and that the title of the plaintiff be quieted. Judgment was rendered in each case in favor of the defendant, and the plaintiff appeals. The questions in controversy are common to all the cases, and they are submitted together on one abstract.—*Affirmed.*

*J. H. & C. M. Swan,* for appellant.

*M. B. Davis,* for appellees.

Robinson, J.—The claim of title made by the plaintiff is based upon the following: An act of congress, entitled "An act for a grant of lands to the state of Iowa, in alternate sections, to aid in the construction of a railroad in said state," approved May 12, 1861; chapter 134 of the Acts of the Eleventh General Assembly of the state of Iowa; an alleged compliance with the requirements of said acts; patents issued by

the United States to the state of Iowa; and chapter 34 of the Private, Local and Temporary Acts of the Fifteenth General Assembly of Iowa. The defendants, Countryman and Phillips, claim title under homestead entries, made on the twelfth day of September, 1887; and the defendants, Royer and Battin, claim, by virtue of pre-emption, entries made on the same date. Those portions of the act of congress specified which we need to consider are as follows:

"Be it enacted * * * that there be and is hereby granted to the state of Iowa, for the purpose of aiding in the construction of a railroad from Sioux City, in said state, to the south line of the state of Minnesota; * * * also to said state for the use and benefit of the McGregor Western Railroad Company, for the purpose of aiding in the construction of a railroad from a point at or near the foot of Main street, South McGregor, in said state, in a westerly direction, by the most practicable route, on or near the Forty-third parallel of north latitude, until it shall intersect the said road running from Sioux City to the Minnesota state line, in the county of O'Brien, in said state, every alternate section of land designated by odd numbers, for ten sections in width, on each side of said roads; but in case it shall appear that the United States have, when the lines or routes of said roads are definitely located, sold any section or any part thereof, granted as aforesaid, * * * or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected, for the purposes aforesaid, from the public lands of the United States nearest to the tiers of sections above specified, so much land in alternate sections, or parts of sections, designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved or otherwise appropriated * * * as aforesaid, which lands, thus

indicated by odd numbers and sections, by the direction of the secretary of the interior, shall be held by the state of Iowa for the uses and purposes aforesaid; provided, that the lands so selected shall in no case be located more than twenty miles from the lines of said roads; provided, further, that any and all lands heretofore reserved to the United States, by any act of congress, or in any other manner, by competent authority, for the purpose of aiding in any object of internal improvement or other purpose whatever, be, and the same are hereby, reserved and excepted from the operation of this act."

"Sec. 4. The land hereby granted shall be disposed of by said state for the purposes aforesaid only, and in manner following, namely: When the governor of said state shall certify to the secretary of the interior that any section of ten consecutive miles of either of said roads is completed in a good, substantial and workmanlike manner as a first-class railroad, then the secretary of the interior shall issue to the state patents for one hundred sections of land for the benefit of the road having completed the ten consecutive miles as aforesaid. When the governor of said state shall certify that another section of ten consecutive miles shall have been completed as aforesaid, then the secretary of the interior shall issue patents to said state in like manner for a like number; and, when certificates of the completion of additional sections of ten consecutive miles of either of said roads are from time to time made as aforesaid, additional sections of land shall be patented as aforesaid, until said roads, or either of them, are completed, when the whole of the lands hereby granted shall be patented to the state for the uses aforesaid and none other: * * * provided, further, that, if the said roads are not completed within ten years from their several acceptance of this grant, the said lands hereby granted and not patented shall revert to

the state of Iowa for the purpose of securing the completion of said roads within such time, not to exceed five years, and upon such terms as the state shall determine; * * * and, should the state fail to complete said roads within five years after the ten years aforesaid, then the said lands undisposed of as aforesaid shall revert to the United States.

"Sec. 5. * * * As soon as the governor of said state of Iowa shall file or cause to be filed with the secretary of the interior maps designating the routes of said roads, then it shall be the duty of the secretary of the interior to withdraw from market the lands embraced within the provisions of this act."

Chapter 134 of the Acts of the Eleventh General Assembly accepted the grant "upon the terms, conditions, and restrictions" contained in the act of congress. Section 2 conferred "so much of the lands, interests, rights, powers and privileges, as are or may be granted" in pursuance of the act of congress upon the plaintiff "for the purpose of aiding in the construction of a railroad from Sioux City, in the state of Iowa, to the south line of the state of Minnesota." Chapter 144 of the acts of the same general assembly also accepted the grant, and further provided as follows:

"Sec. 2. Whenever any land shall be patented to the state of Iowa in accordance with the provisions of the said act of congress, said lands shall be held by the state in trust for the benefit of the railroad company entitled to the same by said act of congress, and to be deeded to said railroad company as shall be ordered by the legislature of the state of Iowa at its next regular session, or at any other session thereafter."

On the twentieth day of September, 1866, the plaintiff filed in the office of the secretary of the state of Iowa an acceptance of the grant, and in July, 1867, it filed in the same office and in the department of the

interior a map showing the location of its proposed road. In August of that year the lands which were claimed to be included in the grant were withdrawn from market. Before the close of the year 1872 the plaintiff completed a railway from a point on the south line of the state of Minnesota to LeMars, a distance of fifty-six and one-fourth miles, and about two miles of main and side track in Sioux City. It has also built in the place last named a roundhouse, machine and car shops, and other buildings, of the value of one hundred thousand dollars, but has never constructed a road from LeMars to Sioux City. It operates trains between those places—a distance of twenty-four miles —over the track used by the Illinois Central Railway Company. The governor of this state duly certified the completion of five sections of ten miles each, commencing at the south line of the state of Minnesota, as contemplated by the act of congress; and also certified to the completion of the road from the point of commencement to LeMars. Patents were issued by the United States to the state of Iowa for an aggregate four hundred and seven thousand, eight hundred and seventy and twenty-one-hundredths acres of land as inuring under the grant to the plaintiff, including the lands in controversy. The Fifteenth General Assembly, by chapter 34 of its private, local and temporary acts, directed the governor to certify to the plaintiff all lands which were then held by the state of Iowa in trust for its benefit in accordance with section 2 of chapter 134 of the Acts of the Eleventh General Assembly. Certificates have been issued to the plaintiff under that statute for three hundred and twenty-two thousand, four hundred and twelve and eighty-one-hundredths acres of land, but not for the land in controversy. Of the lands so certified a large quantity was claimed by the Chicago, Milwaukee & St. Paul Railway Company under a grant made by the same act of congress under

which the plaintiff claims. In an action in the federal courts, in which said company was the plaintiff, and the plaintiff in these actions and others were defendants, it obtained a decree awarding to it forty-one thousand, six hundred and eighty-seven and fifty-two-hundredths acres of the lands which had been certified to the plaintiff. In the year 1882 the general assembly enacted a law to resume the lands which had been conferred upon the plaintiff under the act of congress of 1864, and which had not been earned. Two years later a law was enacted by the general assembly relinquishing and conveying the lands and rights resumed in the year 1882 to the United States, and directing the governor to certify to the secretary of the interior all lands which had been patented to the state to aid in constructing a railroad from Sioux City to the south line of Minnesota, but had not been patented by the state to the plaintiff. Lands in Dickinson and O'Brien counties |were excepted from the provision of that act. In January, 1887, the governor certified to the secretary of the interior, in accordance with the requirements of the act last specified, a list of twenty-six thousand, seventeen and thirty-three-hundredths acres of lands, including that in controversy. The lands so certified were restored to entry under the settlement laws of the United States in August, 1887, and the entries were made by the defendants as already stated.

I. The act of May 12, 1864, when the trust it created was accepted by the state of Iowa, conferred a right to all the lands contemplated by the act, upon the conditions therein specified. *Leavenworth, L. & G. Ry. Co. v. United States*, 92 U. S. 733; *Grinnell v. Railway Co.*, 103 U. S. 739; *Goodnow v. Wells*, 67 Iowa, 658. The lands included in the grant were to be ascertained by survey, and the location of the lines of road it was intended to aid as to the lands in place and

1. RAILROADS: land grant: conditions: performance: construction.

by appropriate selection as to indemnity lands.   *Sioux City & St. P. Ry. Co. v. Chicago, M. & St. P. Ry. Co.*, 117 U. S. 406; 6 Supt. Ct. Rep. 790, and cases therein cited; *Ryan v. Railway Co.*, 99 U. S. 382.   The grant from the state to the plaintiff was, as broad in terms as that made by the act of congress.   Acts, 11th Gen. Assem., sec. 2, ch. 134.   But it was necessarily limited by the conditions attached to the grant to the state.   The lands were subject to disposal by the legislature only for the purpose of aiding in the construction of a railroad from Sioux City to the south line of the state of Minnesota.   None of them were to be disposed of until the governor should certify to the secretary of the interior that a section of ten consecutive miles of road had been completed in the manner required by the act of congress, and upon that certificate it was the duty of the secretary to issue to the state patents for one hundred sections of land for the benefit of the road which had completed the section, and subsequent patents were to be issued in like manner upon similar certificates.   The lands granted were not to be in any manner disposed of or incumbered except as they were patented.   In case the road was not completed within ten years from the acceptance of the grant, the lands granted and not patented were to revert to the state for the purpose of securing the completion of the road; and, if the state failed to complete the road within five years after the expiration of the ten years aforesaid, the lands undisposed of were to revert to the United States.   It is plain that it was not the intent of congress to authorize the state to transfer to the plaintiff title to the land excepting as it should be earned according to the conditions imposed in the granting act.   See *S. C. & P. Ry. Co. v. Osceola Co.*, 50 Iowa, 178.   No attempt on the part of the state to transfer to the plaintiff an interest not authorized by the act of congress would have been effectual.   *Schulenberg*

*v. Harriman*, 21 Wall. 44; *Farnsworth v. Railway Co.*, 92 U. S. 49; *Jackson, L. & S. Ry. Co. v. Davison*, 65 Mich. 416; 32 N. W. Rep. 733. That an interest was created by the act of the general assembly which designated plaintiff as beneficiary of the grant, and by the acceptance of the provisions of that act by the plaintiff, is undoubtedly true; and we are of the opinion that such interest ripened into an equitable title at least to all the lands which were subsequently earned in the manner provided by the act. But the right remained in the state to resume control of all lands not earned within ten years from the acceptance of the grant, and that right was not impaired by the fact that in the grant from the state to the plaintiff the right to resume was not specifically reserved. It existed by virtue of the act of congress, and could not be relinquished to the plaintiff by the state. The right of the state to resume control of the lands which were unpatented and unearned within the ten years allowed to the plaintiff in which to complete its road was properly exercised by legislative enactment. *Schulenberg v. Harriman*, 21 Wall. 44; *United States v. De Repentigny*, 5 Wall. 267. That there was delay in resuming such control is a matter of which the plaintiff has no right to complain; nor can it question the effectiveness of the resumption. It was also proper for the state, by the means it adopted, to relinquish to the United States the color of title which it held to the unearned lands through the act of May 12, 1864, and the patent issued thereunder.

II. The appellant contends that it has earned the lands in controversy, and is entitled to them for that reason. They are not within the ten-mile limits of this grant; but it seems to be conceded that they are within twenty miles of the line of road as originally platted by the plaintiff. Although the plaintiff constructed fifty-six and one-fourth miles of road from the south line

of the state of Minnesota to LeMars, and a little more than one mile of main track in Sioux City, it is entitled to land only for five completed sections of road of ten miles each.   The line which the grant was designed to aid was to be constructed from Sioux City to the south line of the state of Minnesota.   The plaintiff was entitled to land for each completed section of ten consecutive miles of road, but to nothing for less than such a section until the road should be fully completed.   It is not pretended that the road has been completed as contemplated by the act of congress; therefore, the plaintiff is entitled to nothing on account of the last six and one-fourth miles constructed on the line to LeMars; nor is it entitled to anything for that part of the road built in Sioux City, and the improvements there made.

If the plaintiff is entitled to the lands in controversy it must be for the reason that they are a part of the indemnity lands which have been earned by reason of the construction of fifty miles of road.   The first two certificates of the governor show that the three sections first completed commenced at the Minnesota line, and extended thence in a southerly direction towards Sioux City.   The certificate as to the fourth and fifth sections does not show that they continued the line of the first three sections; but, in the absence of proof to the contrary, we will presume that the five sections certified formed a continuous line of fifty miles southward from the south line of the state of Minnesota where it connected with the St. Paul & Sioux City road, and with which it was operated as a continuous line.   The number of acres certified by the governor to the plaintiff was, as has been stated, three hundred and twenty-two thousand, four hundred and twelve and eighty-one-hundredths.   But the act of May 12, 1864, also granted to the state certain lands to aid in the construction of a railroad from South McGregor

westward to a point of intersection with the road to be built from Sioux City, in the county of O'Brien, and the limits of the two grants included the same land in the neighborhood of the point of junction. A conflict between the claimants under the grant was settled by the decision in the case of *Sioux City & St. P. Ry. Co. v. Chicago, M. & St. P. Ry Co.*, 117 U. S. 406; 6 Sup. Ct. Rep. 790, and resulted in giving to the Milwaukee Company forty-one thousand, six hundred and eighty-seven and fifty-two-hundredths acres of the land which had been certified to the plaintiff. The amount of land it has received for building the five completed sections of its road thus appears to be two hundred and eighty thousand, seven hundred and twenty-five and twenty-nine-hundredths acres, instead of three hundred and twenty thousand, which it claims. But we do not think plaintiff is entitled to the quantity of land which it claims. The act of congress granted to the state for the purpose of aiding in the construction of the two railroads described every odd-numbered section of land within the limits specified, and provided that if it should appear, when the roads were located, that the United States had sold any part of such sections, or that the right of pre-emption or homestead settlement had attached to them, or that they had been reserved by the United States for any purpose whatever, then the secretary of the interior should cause to be selected other lands in lieu of those sold, reserved or otherwise' appropriated. We are of the opinion that the sale, reservation and appropriation contemplated by the act cannot be held to be anything which was affected by the act itself, but to some disposition of the land made under other provisions of law. The granting to the state for the benefit of each road of a moiety of the odd-numbered sections within the overlapping ten-mile limits was not a sale, reservation or other appropriation of the land within the meaning of the act. In other words, it was the intent

of congress to grant for the benefit of each road but half as much land within as without such overlapping limits. Section 4, considered by itself, seems to authorize a different conclusion, but it must be construed in connection with the remainder of the act.

It follows from what we have said that the right to select for the plaintiff lands within the indemnity limits for those portions of the odd-numbered sections within the overlapping ten-mile limits which belonged to the Milwaukee Company did not exist. The number of acres of such land awarded to the Milwaukee Company in the suit to which we have referred was twenty-five thousand, two hundred and sixty-nine and eighty-six-hundredths; but in an instrument prepared by the secretary of the interior, and introduced in evidence, it is stated that there are within the overlapping ten-mile limits of the two grants seventy thousand, three hundred and forty-five and sixty-seven-hundredths acres. Accepting that as the true amount, it appears that plaintiff is entitled to two hundred and eighty-four thousand, eight hundred and twenty-seven and seventeen-hundredths acres · of land for the five completed sections of its road, or four thousand and one hundred and one and eighty-eight-hundredths acres more than it has received. There were patented to the state as inuring under the grant to the plaintiff, but not certified to it, eighty-five thousand, four hundred and fifty-seven and forty-hundredths acres. Of that amount, thirty-seven thousand and seven hundred and forty-seven and eighty-nine-hundredths acres have been awarded by the decree of the federal courts to the Milwaukee Company, and twenty-six thousand, seventeen and thirty-three-hundredths appear to have been certified to the secretary of the interior as falling within the provisions of the act of the general assembly of 1884, leaving twenty-one thousand, six hundred and ninety-two and eighteen-

hundredths acres still held by the state to satisfy the grant to the plaintiff, or more than five times the amount to which it appears to be entitled. The issuing of the patents to the state for more land than the plaintiff had earned seems to have been the result of a mistake of fact. But, however that may be, the plaintiff acquired no title to the excess so patented. There has been a partial adjustment between the United States and the state of Iowa, and the latter has relinquished to the former a part of the excess, including the land in controversy. Since the authorities charged with the duty of selecting the land to which the plaintiff is entitled have decided that the land relinquished had not been earned, the burden is upon the plaintiff to show the title it asserts, for it must be presumed that the deficiency in its grant must be made up from land, the title to which appears to be vested in the state for that purpose. But the plaintiff has wholly failed to show any reason for holding the land in controversy rather than the land still held by the state. It is not shown to be nearer the tiers of sections within the ten-mile limits than any other land available to satisfy the grant. None of it is within twenty miles of the five completed sections of road, and none of it is within twenty miles of the terminus of the road at LeMars if the distance be measured by section lines. Whether the plaintiff is entitled in any event to land located more than twenty miles from its completed line is a question which we do not find it necessary to determine. In our opinion the plaintiff has failed to show that it has earned the tracts of land claimed by the defendants.

The judgment of the district court in each case is, therefore, AFFIRMED.