## SOUTHERN PAC. R. CO. *v.* STANLEY *et al.*

(*Circuit Court, S. D. California.* February 8, 1892.)

1. **QUIETING TITLE—RAILROAD LAND GRANTS.**
   The rule that a suit to quiet title can only be maintained upon the legal title does not apply as against a railroad company, with respect to lands granted to it by the government, when it has done everything required to entitle it to the grant, since it is powerless to compel the government to issue a patent therefor.

2. **SAME.**
   It would be inequitable to regard such a company as the legal owner for the purpose of imposing taxes upon it, while denying it the same standing with respect to the enforcement of its rights.

3. **SAME—FOLLOWING STATE STATUTES.**
   Code Civil Proc. Cal. § 738, permitting actions to quiet title to be brought by persons not in possession, is applicable to suits in the federal courts.

4. **RAILROAD LAND GRANTS—PASSING OF TITLE.**
   Under Act Cong. March 3, 1871, granting lands in aid of the Texas Pacific Railroad Company, the full equitable title passed at the time of filing the map of definite location of the road, and, as against such title, no rights could attach between that date and the date of the order withdrawing the land from market.

5. **SAME—CLOUD ON TITLE.**
   A bill to quiet title, alleging that the United States had full title at the time complainant's grant attached, and that defendant claims under a patent issued by the state as for land to which the state was entitled in lieu of certain other grants, shows a cloud upon the title, although it is not alleged that such lands were ever listed to the state; since the state patent creates a presumption that all steps necessary to its issuance have been complied with.

6. **SAME—LIMITATIONS—INTEREST OF GOVERNMENT.**
   In an action to quiet title to railroad grant lands, in respect to which the company has performed all the requisite conditions, and has constantly sought, without success, to obtain a patent, against one claiming under a state patent issued as for lands selected in lieu of other grants, the United States being legally liable to make the company's title good, has such an interest in the suit, although not a party, as will prevent limitation from running against the company's cause of action.

7. **SAME—LACHES.**
   In an action by a railroad company to quiet title to lands granted to it by the United States no laches can be imputed to the company with respect to time passing between the date of the grant and the time of complete performance of the conditions thereof; for, though the title passes as of the date of the grant, it only does so by relation, upon the performance of the conditions, and before performance no such suit could be maintained.

In Equity. Suit by the Southern Pacific Railroad Company against Stanley and others to quiet title to lands. Heard on demurrer to the bill. Overruled.

*Joseph D. Redding* and *Creed Haymond*, for plaintiff.

*Houghton, Silent & Campbell*, for defendants.

Ross, District Judge. By the bill filed in this case the complainant seeks to have its alleged title to the land in controversy established, and to obtain a decree that the patent under which the defendants assert title to the premises is null and void, and enjoining defendants from claiming title thereto thereunder or at all. The demurrer raises a number of objections to the bill. The title claimed by the complainant comes from the act of congress of March 3, 1871, entitled "An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes." The bill shows that the line of road thereby authorized to be located and built was located and built by the complainant, and that it thereby earned the granted lands. It alleges that on the 3d day of April, 1871, a map showing the definite location of the road was filed in the office of the secretary of the interior and in that of the commissioner of the general land-office; that the lands in controversy are within 20 miles of the line of the road as so definitely located and afterwards constructed; that at the time of the definite location of the route they had not been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, for any purpose whatever, and that the United States had full title thereto on that day; that subsequent to the said 3d day of April, 1871, one J. Q. A. Stanley "made a location upon said land, as lieu land, in lieu of a portion of a sixteenth section of school land lost to the state of California under the grant of congress to it of March 3, 1853;" that thereafter the land was awarded to Stanley by the state of California; and that on the 24th of July, 1874, the state issued to him its patent therefor, under which the defendants assert title to the premises.

The first objection urged to the bill on the part of the defendants is that it does not appear therefrom that no other right than that set up in the bill attached to the land prior to the order withdrawing it from market, which the bill alleges was made on the 10th day of May, 1871. The answer to this is that, according to the averments of the bill, the title of the complainant attached to the land, not at the date of the order for its withdrawal from market, but at the time of the definite location of the route of the road. *Sioux City & St. P. R. Co. v. Chicago, M. & St. P. Ry. Co.,* 117 U. S. 408, 6 Sup. Ct. Rep. 790; *St. Paul & S. C. R. Co. v. Winona & St. P. R. Co.,* 112 U. S. 726, 5 Sup. Ct. Rep. 334; *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. Rep. 336. The land in question, then, being, according to the allegations of the bill, vacant, unappropriated public land of the United States, became, by virtue of the congressional grant, the property of the complainant. True, the dry, legal title remained in the government; and this fact is the ground of another objection to the bill.

It is said that a suit to quiet title can only be maintained upon the legal title. Undoubtedly the general rule in equity practice is that such a bill cannot be maintained without clear proof both of the legal title and possession in the complainant. *Frost* v. *Spitley*, 121 U. S. 552, 7 Sup. Ct. Rep. 1129. But this rule, I think, should not be held to apply where, as here, the grant is from the government; where all of its conditions have been complied with, the land earned, and become taxable to the grantee in the state where it is situate; where the grantee's equity has become perfect, and nothing remains to be done but the conveyance of the dry, legal title, which the grantee is powerless to compel the government to make. See *Frost* v. *Spitley*, 121 U. S. 556, 7 Sup. Ct. Rep. 1129. It is certainly not in accordance with equitable principles to regard the complainant as the legal owner of the land for the purpose of imposing the burden of taxation upon it, (*Van Brocklin* v. *Tennessee*, 117 U. S. 169, 6 Sup. Ct. Rep. 670,) and not consider it in the same light when it comes to seek the enforcement of its rights respecting the property. By the rigid rules of law, complainant could not be regarded as the legal owner until the conveyance to it of the legal title from the government, and therefore in this court it could not maintain an action of ejectment for the recovery of the land. But this is an additional reason why a court of equity should regard the complainant in the light already indicated.

It is also contended that, as the bill fails to show possession of the land in complainant, it cannot be maintained. The point would be good but for the statute of California permitting such actions to be maintained whether the complainant be in or out of possession. Code Civil Proc. Cal. § 738; *People* v. *Center*, 66 Cal. 551, 5 Pac. Rep. 263, 6 Pac. Rep. 481; *Castro* v. *Barry*, 79 Cal. 446, 21 Pac. Rep. 946. Such a state statute, enlarging, as it does, the class of cases in which relief was formerly afforded by a court of equity in quieting the title to real property, is applicable to, and may be administered in, the federal courts. *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495.

It is further urged that the bill does not show that the claim set up by the defendants casts a cloud upon the complainant's alleged title; and this because it is not alleged that the land in question was ever selected by the state or listed to it by the United States. But the bill does allege that the United States had full title on the day the complainant's grant attached to the land, and that thereafter the state issued to Stanley a patent therefor as land to which the state was entitled in lieu of a portion of a sixteenth section granted to it by the act of congress of March 3, 1853. The government of the United States is the original source under which both complainant and defendants claim title; the complainant under direct grant to it from congress, and defendants under a congressional grant to their grantor. "Every instrument purporting by its terms to convey land from the original source of title, however invalid, creates a cloud upon the title, if it requires extrinsic evidence to show its invalidity." *Pixley* v. *Huggins*, 15 Cal. 128. A patent from the state for lands in lieu of a sixteenth or thirty-sixth section

granted to it by the act of congress of March 3, 1853, shows at least a *prima facie* title in the holder, on which he could recover in ejectment in the absence of evidence overcoming it.    The patent is attended with the presumption that every step necessary to its issuance has been complied with, including the listing of the land to the state.    Unless this is so, it is difficult to perceive the use of such an instrument.    The existence of such a patent creates a cloud upon the true title.    *Van Wyck* v. *Knevals*, 106 U. S. 370, 1 Sup. Ct. Rep. 336.

Another objection urged by the defendants to the bill is that it is barred by lapse of time.    It is therein alleged, in effect, that, ever since the grant to complainant attached to the land in question, complainant has been persistently and continuously, but in vain, endeavoring to procure from the officers of the land department of the government a patent for this, among other lands embraced by its grant.    Counsel for de-fendants contend that the fact that complainant was during all of this time pressing its demand for a patent from the government does not excuse its delay in bringing the present suit against the defendants, which was not commenced until February 20, 1890; that complainant had the same title to the land in question on April 3, 1871, that it had on February 20, 1890; and that its right to maintain a suit of this nature, if it ever existed, accrued when the state patent was issued, on the 24th of July, 1874, and that complainant's long delay in asserting its rights against defendants ought to bar the suit.    It is true the right to maintain the suit would have accrued to complainant upon the issuance of the state patent in July, 1874, if the land had then been earned by the building of the road; otherwise not.    Complainant's title only became perfect by the compliance on its part with all of the conditions of the grant, and when that was done, the title related back to the date of the grant.    It does not appear from the bill that the title of the complainant to the land in question thus became perfect prior to January, 1878.    But, independent of this consideration, it seems to me that the reason of the court for denying the soundness of a like position of counsel in the case of *U. S.* v. *Curtner*, (decided in this circuit by Mr. Justice FIELD and Judge SAWYER,) (Cal.) 38 Fed. Rep. 1, applies to the present case.    It is true the suit there was brought in the name of the United States, but it was brought in the interest of the railroad company, to procure a decree annulling the listing over to the state of certain lands selected by the state in lieu of certain sixteenth and thirty-sixth sections, and annulling certain patents issued by the state therefor; it being claimed that the lands were embraced in the grant to the railroad company.    The court said:

"There has been no laches on the part of the railroad company. It has been pressing its claim earnestly before the department from the first, and it could not go any faster than the business and course of procedure of the department permitted. The company could not sue the government. Besides, we do not think the government is wholly without interest. If these lands are within the statutory grant, the company has earned them by a full performance of its part of the statutory contract, and an absolute, indefeasible right to a patent, unincumbered by any cloud, has vested. The government,

in that case, is legally bound to make a good title. It is legally liable to perform its part of the contract, and issue the patent, as required by the statute. The United States are therefore responsible to the railroad company for the land, or its full value. By the mistake of their officers, they have put it out of their power to comply with their contract, and they are interested to the full value of the land in setting aside the listing and patents resulting from their mistakes, or having them judicially adjudged inoperative and void, in order that they may relieve themselves from their liability."

Time does not run against the government when it is a party to the suit, unless it be a mere nominal party. The reason for this rule would seem to apply where the suit involves a liability of the government for its failure to do what the complainant has persistently and continuously sought to get it to do, and what complainant seeks by the suit to accomplish.

Demurrer overruled, with leave to defendants to answer within the usual time.