# DONAHUE v. LAKE SUPERIOR SHIP CANAL, RAILWAY AND IRON COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 51. Argued November 2, 5, 1894. — Decided December 10, 1894.

This case is governed by the rule laid down in *Lake Superior Canal &c. Co.*
v. *Cunningham, ante,* 354; but, as the land in controversy is near the
crossing of two lines that had received separate grants, it is further
subject to the rule that where two lines of road are aided by land grants
made by the same act, and the lines of those roads cross or intersect,
the lands within the "place" limits of both at the crossing or intersec-
tion do not pass to either company in preference to the other, no matter
which line may be first located, or built, but pass in equal undivided
moieties to each.

THE case is stated in the opinion.

*Mr. Don M. Dickinson* for plaintiff in error.

*Mr. John F. Dillon,* (with whom was *Mr. Daniel H. Ball*
on the brief,) for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The land in controversy in this case, as that in controversy
in the two prior cases, is a tract which was certified to the
State of Michigan on December 12, 1861, as part of the rail-
road grant, and afterwards, in 1871, again certified to the
State in part satisfaction of the canal grant. Donahue, the
plaintiff in error, entered upon the land in February, 1883,
and has ever since remained in possession. He entered with
the view of preëmpting, and made his first application under
the preëmption laws on April 11, 1883. His application was
rejected by the local office, from which rejection he appealed
to the Commissioner of the General Land Office, and the
appeal is still pending in the department. His entry and
occupation were such as within the opinion in the *Cunningham*

*case* made him a *bona fide* claimant, and entitled to the benefit of the confirmation granted by the closing sentence in section three of the act of March 2, 1889.

The tract was not, however, within the "clear" six-miles limits of the Ontonagon and State Line road, but was near the crossing of the Ontonagon and the Marquette lines, and within six miles of each, and was part of the 41,649.25 acres certified on December 10, 1861, by the Land Office, in a separate list to the State, which list was, as appears from the statement of facts in the *Cunningham case*, included in the release, made on January 31, 1868, by the Chicago and North-western Railway Company to the State, and that, on May 1, 1868, by the governor of the State to the United States. On that ground it was held by the Circuit Court that the lands at the time of the second certification to the State, to wit, that in satisfaction of the canal grant, were wholly released from the operation of the railroad grant, and were subject to selection and certification for the benefit of the canal company, and that such selection and certification operated to pass to it a full title — a title which could not be defeated by any subsequent entry by the defendant for either homestead or preëmption. The case turns, therefore, on the effect of the releases to the State and by it to the United States.

By the original act of June 3, 1856, grants of land were made in aid of the construction of two roads, one from Marquette to the state line, and one from Ontonagon to the state line. These grants were bestowed by the State of Michigan, separately, on the Marquette and Ontonagon Companies. The rule is that where two lines of road are aided by land grants made by the same act, and the lines of those roads cross or intersect, the lands within the "place" limits of both at the crossing or intersection do not pass to either company in preference to the other, no matter which line may be first located, or road built, but pass in equal undivided moieties to each. *St. Paul & Sioux City Railroad* v. *Winona & St. Peter Railroad*, 112 U. S. 720; *Sioux City & St. Paul Railroad* v. *Chicago, Milwaukee &c. Railway*, 117 U. S. 406. This rule was evidently in the mind of Congress when it passed the con-

firmatory act of 1889, for in the last sentence of section four there is a provision that a moiety forfeited on account of the non-completion of one main or branch line should not inure to the benefit of the completed line. When, therefore, the roads from Marquette and Ontonagon respectively to the state line were duly located, the lands within six miles of both at the intersection became appropriated in equal undivided moieties to aid in the construction of each. The fact of the consolidation of the Marquette and the Ontonagon Companies with the Fond du Lac Company, and the further fact that the map of definite location was prepared and filed by the consolidated company, in no manner affect this rule of appropriation. The lands were granted by the United States to the State for the accomplishment of specified purposes, and those purposes could not be defeated by the State, or by any corporations, beneficiaries under the State.

It may be that the release of the Chicago and Northwestern Railway Company, at that time the beneficial owner of both the Marquette and the Ontonagon grants, operated to relinquish to the State of Michigan the title to all the lands within such grants; but the only release authorized by the legislature of the State of Michigan was of the lands granted to aid in the construction of the road from Marquette to the Wisconsin state line. This authorized no giving up of the grant in aid of the construction of the road from Ontonagon to the state line, and as that held an undivided moiety of the lands at the crossing, to that extent at least, it still remained after all the releases. It may be a novel condition which resulted, in that it left the State and the United States joint owners, each holding the title to an undivided moiety of this body of lands, and it may be that further evidence may place the case in a different attitude; but on the record as it now stands, it would seem that the plaintiff and the defendant were each the owners of an undivided half of the land in controversy. Inasmuch, therefore, as the Circuit Court erred in adjudging to the canal company the full title to the land, its judgment must be

*Reversed, and the case remanded for a new trial.*