## DEWEESE v. REINHARD et al.

### (Circuit Court of Appeals, Eighth Circuit. May 7, 1894.)

### No. 364.

PUBLIC LANDS—HOMESTEAD ENTRY—GRANT TO STATE—ANNULLING CERTIFICATION.

Lands selected by a state under a grant by congress (Act Sept. 4, 1841) were certified to it, and thereafter conveyed by it and its grantees. Several years afterwards, a settlement was made thereon by one claiming under the homestead laws, but his application for entry and his final proofs were rejected on the ground of such previous selection and certification. *Held*, that he stood in no such privity with the United States as would entitle him to maintain a suit to cancel the certification to the state, or to obtain the benefit thereof, on the ground that the lands were not subject to selection by the state.

Appeal from the Circuit Court of the United States for the District of Nebraska.

This was a suit by James M. Deweese, Jr., against Jacob Reinhard, Louisa Fieser, Louis P. Fieser, Bertha M. Kraus, and George C. Kraus, to quiet title to certain land. The bill was dismissed. Complainant appealed.

This is a suit which was brought by the appellant for the purpose of quieting his title to the N. E. ¼ of section 14, township No. 5, range 3, in Saline county, state of Nebraska. The record discloses the following facts:

That the land in controversy, together with other lands, was selected by the state of Nebraska, on March 26, 1868, under the provisions of an act of congress approved September 4, 1841 (5 Stat. 455, § 8), which granted to each new state thereafter admitted into the Union 500,000 acres of land for the purposes of internal improvement; that such selection of lands was duly approved by the secretary of the interior on March 29, 1870, who caused the same to be duly certified to the state of Nebraska on April 7, 1870; that the state afterwards granted 100,000 acres of land, including the tract now in controversy, to the Midland Pacific Railway Company, and on July 19, 1871, issued a patent therefor to the railway company; that the appellees have since acquired the title of the Midland Pacific Railway Company to the premises in dispute, under and by virtue of several mesne conveyances, the last of which was a deed to the appellees, executed on November 11, 1878. Nearly five years after the date of the conveyance to the appellees, to wit, on May 31, 1883, the complainant settled on the tract of land now in question, claiming the right to make such settlement under and by virtue of the homestead laws of the United States. In support of his settlement, he prepared the requisite affidavit, and an application for permission to enter the land as a homestead, and presented the same to the register of the proper land office of the United States at Beatrice, Neb., on May 31, 1883. The application for a homestead entry was forthwith rejected by the register on the ground that the lands had been selected by the state on March 26, 1868, and that such selection had been approved by the secretary of the interior on March 29, 1870. An appeal was taken by the complainant from the decision of the register rejecting the aforesaid application, which appeal was based on the ground that the lands in dispute, at the time of their selection by the state, lay within the 20-mile limits of a grant made to the Burlington & Missouri River Railroad Company in Nebraska by an act of congress approved on July 2, 1864, and that the same

were not subject to selection by the state of Nebraska under the act of September 4, 1841. On the hearing of the aforesaid appeal before the commissioner of the general land office, that officer affirmed the action of the register in rejecting the application for a homestead entry. Such order of affirmance was made by the commissioner on July 7, 1883. On a further appeal to the secretary of the interior, the action of the commissioner of the general land office was affirmed on January 18, 1884, the secretary stating, in substance, that the previous certification of the lands to the state of Nebraska was a final adjudication of all questions pertaining to the title to the lands in controversy, so far as the department of the interior was concerned. Notwithstanding the foregoing proceedings, the appellant continued in possession of the lands until July 6, 1888, and on that date, after due notice, he presented the requisite proofs to the register of the land office at Beatrice, Neb., that he had resided on and cultivated the lands in question for a period of five years and more from the date of his entry. These final proofs of residence and cultivation were likewise rejected by the register, because the lands had been selected by, and duly certified to, the state of Nebraska in the years 1868 and 1870. The contention of the complainant, before the circuit court, was that the lands had been unlawfully selected by and certified to the state, because they were within the limits of an antecedent grant to the Burlington & Missouri River Railroad Company. At the same time, however, he contended that they were subject to homestead entry, and that they had been duly appropriated by himself under the provisions of the homestead laws. The bill contained a prayer in the alternative that the complainant's title might be quieted against the claim of the defendants, or that, in lieu thereof, it might be decreed that the defendants took the legal title to the premises in controversy in trust for the complainant, and that they might be required to convey the same to him. The bill was dismissed on final hearing for want of equity, whereupon the complainant prayed an appeal to this court.

G. M. Lambertson (J. W. Deweese, on the brief), for appellant.
Charles E. Magoon and Charles Offutt, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the facts as above, delivered the opinion of the court.

At the threshold of this case, we are confronted with the question whether the appellant stands in such privity with the United States as entitles him to maintain a suit to annul the certification of the land in dispute to the state of Nebraska, which act on the part of the secretary of the interior had the legal force and effect of a patent. Frasher v. O'Connor, 115 U. S. 102, 5 Sup. Ct. 1141. It will be observed from the foregoing statement that the alleged equitable title which the appellant seeks to enforce not only had its origin in a settlement made upon the land in controversy more than 15 years after it had been certified to the state in supposed compliance with the provisions of existing laws, but that such settlement was also made by the appellant with full knowledge, actual or constructive, that the state of Nebraska had issued a patent for the land more than 12 years previous to the attempted settlement, and that in the meantime the land had been several times conveyed to private parties. Moreover, the appellant's application to enter the land as a homestead was rejected by the proper land office on the very day that his entry upon the land is said to have been made, because of the prior selection of the same by the state, and, on an appeal duly prosecuted to the commissioner of the general land

office and to the secretary of the interior, the action of the local land officer in rejecting the application for entry was speedily approved by both of those officers. There is nothing in the record now before us which shows that any officer of the land department at any time recognized the appellant's right to enter the land as a homestead, or authorized the settlement thereon which he saw fit to make. From the date of his entry, on May 31, 1883, until the rejection of his final proof, in July, 1888, the appellant appears to have occupied the premises without the sanction of any officer of the government, either express or implied. It is insisted, however, that the appellant has succeeded to all of the rights of the United States with respect to the land in question, and is entitled to challenge the appellees' title thereto, notwithstanding the facts aforesaid, because the laws of the United States gave him the right to appropriate the land as a homestead, which right could not be impaired or defeated by the officials of the land department, it being land that had been unlawfully selected by the state. We do not dispute the general proposition that a person becomes the equitable owner of a tract of land forming a part of the public domain, if it has been surveyed and placed on the market, when he makes a prior settlement thereon under the homestead or pre-emption laws of the United States, and subsequently complies with all of the terms and conditions of those laws which entitle him to a patent. It may also be conceded that the right of a homestead or pre-emption claimant to a patent, when he has made a lawful settlement, and done everything required of him to perfect his claim, cannot be prejudiced either by the intentional misconduct of the officers of the land department, or by their mistakes of law or neglect of duty. Moreover, it may be admitted that the holder of an equitable right or title to a tract of land, which has been acquired in the manner aforesaid by a lawful settlement thereon, and by the performance of such other acts as the law prescribes to entitle a settler to a patent, stands in privity with the government, in such sense that he may maintain a bill to cancel a patent erroneously issued to a third party for the same land after the settler's rights had become vested. These principles find sufficient illustration and support in the following cases: Lytle v. Arkansas, 9 How. 314; Shepley v. Cowan, 91 U. S. 330; Barnard's Heirs v. Ashley's Heirs, 18 How. 43; Cunningham v. Ashley, 14 How. 377; Wirth v. Branson, 98 U. S. 118.

But is it a necessary or even a reasonable deduction from these premises that, after the government has granted a patent for a tract of land forming a part of the public domain, a third party may then make a settlement on the same land without the consent of those officers of the government who are charged with the custody and control of the public lands and with the administration of the land laws, and, having made a settlement under such circumstances, may then maintain a bill in his own name to annul the prior grant, which the government, for a long period of years, has shown no disposition to disturb? We think that this question should be answered in the negative, both upon principle and authority. One who makes a homestead or pre-emption settlement under the cir-

cumstances last supposed, and with the knowledge that it has been patented to, and is claimed by, another, does so with the evident intention of taking advantage of the mistakes of others, and, in the forum of equity, should not be allowed the same privilege of assailing a patent which may justly be conceded to one who seeks to enforce an equitable title to land, that had its origin in a settlement made before the government parted with the legal title. In the former case, a person who makes a settlement with knowledge of a prior grant thereby places himself in an attitude of open hostility to the executive department of the government, usually for the purpose of speculating on a flaw in his neighbor's title; and, while occupying that attitude, we think that he should not be allowed, as complainant in a suit in equity, to challenge the validity of the prior grant, which it may be inexpedient, and clearly inequitable, to call in question. Cragin v. Powell, 128 U. S. 692, 700, 9 Sup. Ct. 203. The government ought to have as much discretion as a private grantor, in determining whether it will assail the validity of its own grant, especially in cases like the one at bar, where no right had attached in favor of third parties when the grant was made. If there is a defect in the appellees' title, congress may deem it both expedient and just to remedy the defect by appropriate legislation; and no one can doubt its power to do so, notwithstanding the title asserted by the complainant, in view of the circumstances under which that title was acquired.

We think that the authorities fully support the foregoing views. In Cooper v. Roberts, 18 How. 173, the plaintiff claimed a tract of land under a patent issued by the state of Michigan, which was occupied by the defendant as mineral land, under a lease executed by the secretary of war. It was held that the land had been lawfully appropriated by the state, as school land, at the date of its patent, under an act of congress granting to the state the sixteenth section in each township for the maintenance of public schools. Thereupon, the defendant sought to impeach the patent on the ground that it had been issued in violation of the laws of Michigan. But the court said, speaking through Mr. Justice Campbell, that the defendant did not claim in privity with the state of Michigan, and was not in a position to question the validity of its grant; that, as the state had not seen fit to complain of the patent, the defendant could not be heard to do so. In the case of Spencer v. Lopsley, 20 How. 264, 273, the same principle was reaffirmed and applied. In that case the plaintiff claimed under a title which had emanated from the states of Coahuila and Texas years before the defendant had made a settlement on the premises in dispute. The defendant attempted to impeach the grant on which the plaintiff relied because it had not been executed in conformity with the laws of the state or sovereignty from which it had emanated; but the court said, again speaking through Mr. Justice Campbell, that he was a mere volunteer, who had entered on the land after it was granted, and that he had no commission to challenge a grant which the state, for a quarter of a century, had not seen fit to disturb. The case of Beard v. Federy, 3 Wall. 478, also seems to us to have an important

bearing on the point at issue. In that case the act of congress authorizing the issuance of the patent under which the plaintiff claimed provided that the patent should be "conclusive between the United States and said claimants only, and should not affect the interests of third persons." But the supreme court held that the term "third persons," as used in said act, did not embrace all persons who might assert a title to the land covered by the patent, but only such persons as might have acquired a superior equitable title thereto by acts done before the patent was issued, and that, as against all other persons, a patent issued under the provisions of the act was conclusive, and not subject to attack. It was also held in Field v. Seabury, 19 How. 323,—and the doctrine is now well established,—that a patent for land can only be impeached for fraud at the suit of the government. See, also, to the same effect, Smelting Co. v. Kemp, 104 U. S. 636, 657; Vance v. Burbank, 101 U. S. 514; Crommelin v. Minter, 9 Ala. 594; Doll v. Meador, 16 Cal. 295. It will be found, we think, on a critical examination of all of the federal adjudications, that in no case has a person who had a merely equitable claim to a tract of land as yet been allowed to maintain a bill to cancel a patent, or to quiet his title, as against an outstanding patent issued to a third party for the same land, or to have the patentee adjudged to be a trustee of the legal title, unless the equitable title asserted by the complainant had its origin in a settlement made upon the land before the patent was issued, and before the patentee had done any act with a view of appropriating the property, and securing a patent therefor. In no case does it appear that a bill of the present nature has been successfully prosecuted by a claimant whose rights had their origin years after the government had parted with the legal title. In making this statement, we have not overlooked the decision in Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, on which the appellant's counsel places much reliance. In that case it was decided that a defendant in a suit in ejectment had the right to show by appropriate evidence that the patent under which his adversary claimed was utterly void. The court appears to have sustained the admissibility of such evidence, in obedience to the old and familiar rule that in an ejectment suit the plaintiff always exposes his own title to attack, and must recover altogether on the strength thereof, rather than on the weakness of his adversary's title. But we do not understand that the court intended to go beyond that point, or to hold that a homestead claimant may maintain a bill in equity to cancel, or to obtain the benefit of, a patent issued to a third party, when, as in the present case, the settlement on which the claimant relies was made without the sanction of the officers of the land department, and years after the patent in question was issued. That view of the case seems to us to be utterly irreconcilable with sound doctrine and the decisions heretofore cited.

Our conclusion is that the complainant's bill was properly dismissed for the reasons herein stated, and, without deciding the other questions that are presented by the record, the decree of the circuit court will be affirmed.