### HARVEY v. HOLLES.

(Circuit Court, N. D. Iowa, W. D. April 1, 1908.)

No. 255.

1. ADVERSE POSSESSION—VALIDITY OF TITLE.

Where the possession of public land by defendant and his grantors was not wrongful as to any one but the United States, and defendant and his immediate grantor entered under color of title and claim of right, and continued in uninterrupted adverse possession under such claim of title for more than 10 years prior to the commencement of a suit by an alleged subsequent homestead entryman, defendant acquired a valid title by adverse possession as against all but the state or the United States.

2. PUBLIC LAND—HOMESTEAD ENTRY—LAND IN POSSESSION OF OTHERS.

Rev. St. § 2289 (U. S. Comp. St. 1901, p. 1388), provides that every citizen who is the head of a family may enter a quarter section of land as a homestead which may at the time of the application be subject to preemption. On repeal of the pre-emption law by Act March 3, 1891, c. 561, § 5, 26 Stat. p. 1097 (U. S. Comp. St. 1901, p. 1388), section 2289 was amended so as to provide that a homestead entry might be made on "unappropriated public lands." Held, that such amendment did not change the character of the lands, as regards occupancy or improvement, that might be entered, and that only unoccupied and unimproved lands of the United States are subject to pre-emption or homestead settlement, though the possession of the prior occupant was wrongful as against the United States.

[Ed. Note.—Rights acquired by homestead settlement and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

**3. SAME—LAND DEPARTMENT DECISIONS—EFFECT—APPEAL.**

Where a local land office and the Commissioner of the General Land Office adjudged that certain land in controversy which complainant attempted to enter as a homestead was not subject·to entry, and that complainant acquired no right thereto, such decision, unappealed from, constituted a conclusive adjudication of all questions of fact, in the absence of fraud or mistake.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 303.]

**4. SAME—LACHES.**

Where complainant, after the rejection of his application to enter certain land as a homestead, knowing that defendant was in possession of the land and making improvements thereon under a claim of ownership, acquiesced in the decision of the Land Office for six years, he could not maintain a bill to compel defendant to convey to him the legal title to such land with the improvements, on the theory that defendant was a trustee of such title for complainant's benefit.

In Equity. On final hearing. Suit to require the defendant to convey to complainant the legal title to certain land in O'Brien county, this state, which it is alleged the defendant holds in trust for him. The complainant claims the right to the land under the homestead laws of the United States. The defendant holds a patent to it from the United States issued to him under the acts of Congress approved May 12, 1864, c. 84, 13 Stat. 72, and March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595). He also claims that he is entitled to it under the homestead laws. The facts are sufficiently stated in the opinion.

M. B. Davis, for complainant.
W. P. Briggs, for defendant.

REED, District Judge. The land is a part of that granted to the state of Iowa by the act of Congress approved May 12, 1864, c. 84, 13 Stat. 72, to aid in the construction of two railroads in that state, one of which was to be from Sioux City to the south line of the state of Minnesota. The state, by act of its General Assembly approved April 3, 1866, accepted the grant, and conferred upon the Sioux City & St. Paul Railroad Company, an Iowa corporation (hereinafter called the Sioux City Company), a part of the land in consideration of its constructing the road from Sioux City to the Minnesota line, a distance of some 83 miles. That company accepted the grant and filed a map of definite location of the road with the Secretary of the Interior July 16, 1872, and commenced the construction of the road, and in the same year completed 56.25 miles thereof from the south line of the state of Minnesota (where it connects with a road from Minneapolis and St. Paul) to LeMars in the direction of Sioux City, but never completed it to Sioux City. The Secretary of the Interior instead of issuing patents for the land upon certificates of the Governor of the state, showing the proper construction of completed sections of 10 consecutive miles each of the road, as required by the act of May 12th, issued to the state between October 16, 1872, and June 4, 1877, for the benefit of the Sioux City Company, patents for 407,870.21 acres of public land, including the land in controversy,

within the limits of said grant. Of this amount the state issued patents to the company for 322,412.80 acres, leaving 85,457.41 acres so patented to the state, including the land in suit, no part of which was ever patented to the company. The road not having been completed, as required by the act of Congress, the state, by act of its General Assembly approved March 16, 1872, resumed all of the lands not earned by the company, and in 1884 relinquished its right, title, and interest therein, except to the lands in Dickinson and O'Brien counties, to the United States. The Sioux City Company claimed all of the lands patented to the state for its use, notwithstanding the resumption and relinquishment thereof to the United States as stated. October 4, 1889, the United States pursuant to the adjustment act of Congress approved March 3, 1887, (24 Stat. 556, c. 376 [U. S. Comp. St. 1901, p. 1595]), brought suit against the Sioux City Company to quiet in the United States the title to the lands so patented to the state and not patented to the company in which suit it was finally decided by the Supreme Court, October 21, 1895, "that, in any view that could be taken of the company's rights, it had received some 2,005 acres of land more than it was entitled to receive for the road actually constructed by it"; and quieted the title in the United States to all of the lands not patented to the company. Sioux City & St. Paul Ry. Co. v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177. The legislation of Congress and of the state of Iowa, relative to said grant is set forth at some length in the opinion of the court in that case, and in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083. It is also referred to in Sioux City & St. Paul R. R. Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 117 U. S. 406, 6 Sup. Ct. 790, 29 L. Ed. 928, and reference is made to those cases for a full statement of such legislation and other record facts relevant thereto, which need not be further set forth here. After the decision of the Supreme Court in Sioux City & St. Paul Company v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177, and on November 18, 1895, the Secretary of the Interior issued an order declaring the lands to which the title was so quieted in the United States restored to the public domain, and subject to disposal by the Land Department of the United States, and canceled all prior claims thereto, but reserved the right of prior claimants to present new applications therefor to the local land office upon a day to be fixed by that office, public notice of which it was required to give; and in case of conflicting claims to any of the lands directed that office to proceed in accordance with the rules of practice in contest cases. Pursuant to that order the local land office on November 27, 1895, fixed February 27, 1896, as the date upon which said lands would be open to public entry, and gave the required notice thereof. It also gave public notice to all claimants to any of said lands under the act of Congress of March 3, 1887, to file notice in that office of their intention to so claim the same on or before said February 27, 1896. The land in suit is a part of the 85,407.21 acres so patented by the United States to the state of Iowa for the benefit of the Sioux City Company, and not patented by the state to that company, and is within the overlapping or common indemnity limits of

the Sioux City Company and the Chicago, Milwaukee & St. Paul Railway Company (the successor in interest of the McGregor Western Railroad Company, one of the beneficiaries under the grant of May 12, 1864), and after the decision of the Supreme Court, March 29, 1886, in the suit between those companies, which was commenced April 7, 1879 (117 U. S. 406, 6 Sup. Ct. 790, 29 L. Ed. 928) it was allotted to the Sioux City Company in the division of the lands between them. It is the N. ½ S. W. ¼ Sec. No. 29, Tp. 95, R. 42, in O'Brien county, and is opposite to or co-terminous with the fourth section of 10 consecutive miles of constructed road southerly from the Minnesota state line.

In the spring of 1884, the land being then unoccupied, and never having been cultivated, or improved, Simon Powers moved upon it with his family, erected small buildings thereon, and continued to reside upon and cultivate it until he sold it in 1888, as hereinafter stated. June 25, 1887, after the partition of the lands between the two railroad companies as decreed in the suit between them (117 U. S. 406, 6 Sup. Ct. 790, 29 L. Ed. 928); he made a contract with the Sioux City Company for its purchase, agreeing to pay therefor $15.50 per acre, or $1,080, which was its then fair market value. He paid $40 upon the purchase price, and afterwards paid to that company other amounts required by his contract. December 7, 1888, he sold the land, and assigned his contract of purchase to Rasmus Larson for $400 and delivered possession to him. Larson also assumed the amount due upon the contract with the railroad company, entered at once upon the land, made substantial improvements thereon, and continued to farm and cultivate the whole thereof until September 24, 1894. On that date Larson sold the land, and assigned the contract of purchase to the defendant Holles for $600, who in addition assumed the amount owing to the Sioux City Company, which was then estimated to be $1,050. Defendant at once took possession of the land, has ever since continued to farm and cultivate the same, and has paid all required taxes thereon. In 1895, he built a house on the land, and continued to reside thereon till the fall of 1901, except for a short time in the winter of 1895–6, when he moved off temporarily, intending to return, which he did in February, 1896, and made other permanent and substantial improvements upon it. The possession of the land by Powers, Larson, and the defendant has been open, continuous, and uninterrupted since June 25, 1887, under claim of right. January 15, 1896, defendant filed in the local land office notice of his claim to the land under the adjustment act of March 3, 1887, and caused it to be published as required by the order of that office. When defendant purchased the land he was a citizen of the United States, and was then and still is duly qualified to enter and hold the land under the homestead laws of the United States. February 8, 1896, complainant went upon the southeast corner of the south half of the quarter section—the tract immediately south of the land in suit—and erected thereon a small building of the value of $15. It was not habitable, and he never occupied it or settled upon the land. June 25, 1887, Thomas Barry contracted with the Sioux City

Company for the purchase of this south half of the quarter section, and at once took possession and remained in actual possession thereof until after February 8, 1896. Complainant erected the structure upon that land without the knowledge or consent of either Barry or this defendant, and without permission of any one. He knew at such time that Barry had for many years been in the actual possession thereof, and that defendant and his grantors had for many years been in actual possession of the land in suit; and that defendant and Barry then claimed the land occupied by them respectively, and the right to the possession thereof, under their contracts of purchase from the Sioux City Company, and the adjustment act of March 3, 1887. Barry, upon learning of complainant's acts in entering and building upon the land, brought an action of forcible entry and detainer against him under the Iowa statute, and upon a trial thereof judgment was entered ejecting complainant, and removing his building from the land, after which he never returned to that tract, and has never been in possession of the land in suit or any part thereof. February 12, 1896, complainant made application to the local land office to enter the land in suit as a homestead, which application was on that date rejected, and he was notified of his right of appeal, which he never prosecuted. February 27th following he tendered a homestead application for the entire southwest quarter of section No. 29. In the contest arising upon that application the local land office rejected the application of complainant, and awarded the land in suit to defendant under the act of March 3, 1887. On complainant's appeal the Commissioner of the General Land Office decided that complainant was not entitled to any of the land; and also decided that defendant was not entitled to the land in suit under the act of 1887, but was entitled to enter the same as a homestead. Defendant thereupon made application to enter the land as a homestead and tendered the requisite fees therefor. The fees were not accepted, and the application was held for further action. The defendant was advised by his attorneys that it was necessary to appeal from the decision of the Commissioner to protect his right to the land, and relying upon that advice he did appeal to the Secretary of the Interior. The complainant took no appeal from the decision of the Commissioner. March 28, 1900, the Secretary of the Interior awarded the land to the defendant under section 4 of the act of March 3, 1887, and held that it was unnecessary to decide upon his homestead application. The defendant presented his homestead application in good faith, intending to fully comply with the homestead laws, and would have done so but for the decision of the Secretary of the Interior awarding him the land under the act of 1887. Upon the decision of the Secretary of the Interior the government price of the land—$200—was paid to the United States by the Sioux City Company for the benefit of the defendant, and a patent to the land was duly issued to him February 27, 1901, under section 4 of the act of 1887. The United States have ever since retained the price of the land so paid to them. After the decision of the Commissioner of the General Land Office the complainant gave no notice to defendant

that he made, or intended to make, any further claim to the land until the commencement of this suit, and during all of the time had actual knowledge that defendant was in actual possession of the land, claiming to own the same, farming and cultivating it, and making improvements thereon. Defendant, at the time he bought the land from Larson and paid therefor, had no actual knowledge of the pendency of the suit of the United States v. the Sioux City Company, and neither he, Powers, nor Larson was made a party to that suit. The amount paid and agreed to be paid by them respectively for the land was its full value at the time of such agreements. May 9, 1905, after the decision of the Supreme Court in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083, the complainant brough⁺ this suit, praying that defendant be decreed to hold the legal title to the land in trust for, and required to convey it to him.

In Knepper v. Sands it is held that after the resumption of the lands by the state of Iowa in 1882, for failure of the Sioux City Company to complete the road, that company had no interest in the land not patented to it and so resumed by the state; and that a purchaser of any part thereof from that company after such resumption, and after the passage of the adjustment act of March 3, 1887, acquired no right thereto as against a homestead settler upon the land in good faith prior to the adjustment act, and prior to the purchase from the railroad company. No other question was presented to, or decided by, the court in that case. The land there involved was open and unoccupied in 1885 when Sands the appellee, settled upon it, erected a house, and made other improvements with a view of establishing a homestead in accordance with the laws of the United States. He continuously resided upon it afterwards claiming it as a homestead, but his application to enter it as such was rejected by the local land office, presumably for the reason that it was within the limits of the grant of May 12, 1864. After the passage of the adjustment act of March 3, 1887, Mrs. Knepper, the appellant, contracted with the Sioux City Company for its purchase. She never resided upon, cultivated, or improved the land in any manner, but claimed it solely under her contract of purchase from the company and section 4 of the adjustment act. Her position with reference to the possession and occupancy of the land is the same as that of complainant in this suit, except that she did not attempt to intrude upon the prior possession of Sands, while Sands' possession corresponds with that of defendant. It may be conceded that under the decision in that case the defendant acquired no rights to the land under his purchase from the Sioux City Company. But his possession of the land, and that of his grantors, was not wrongful as to any one except the United States, and they are not complaining. He and his immediate grantor, Larson, entered upon the land under color of title and claim of right, and have continued in the uninterrupted adverse possession thereof under such claim and title for more than 10 years prior to the commencement of this suit, which, under the Iowa statute, is sufficient to establish a good title to the land as against all except the state or the United States. Hamilton v. Wright, 30 Iowa, 480; Colvin v. McCune,.

39 Iowa, 502; Leffingwell v. Warren, 2 Black, 599–605, 17 L. Ed. 261; Bicknell v. Comstock, 113 U. S. 149–152, 5 Sup. Ct. 399, 28 L. Ed. 962. The land being so in possession of the defendant and his grantors, the complainant could not, while they were in possession, make a valid homestead settlement upon it. Section 2289, Rev. St. (U. S. Comp. St. 1901, p. 1388), provides:

"Every person who is the head of a family, or who has arrived at the age of twenty-one years, and is a citizen of the United States * * * shall be entitled to enter one quarter section of land as a homestead * * * which may, at the time the application is made, be subject to pre-emption. * * *"

Originally it was only lands subject to pre-emption that might be settled upon as a homestead. Upon repeal of the pre-emption law by the act of March 3, 1891, section 2289 was amended, and as amended it provides that a homestead entry may be made upon "unappropriated public lands." Chapter 561, § 5, 26 Stat. 1097 (U. S. Comp. St. 1901, p. 1388). The amendment, however, does not change or alter the character of the lands, as regards occupancy or improvement, that may be entered, and the uniform holding of the Supreme Court of the United States is that it is only the unoccupied and unimproved lands of the United States that are subject to pre-emption or homestead settlement, though the possession of a prior occupant, if there be one, may be wrongful as to the United States. Atherton v. Fowler, 96 U. S 513, 24 L. Ed. 732; Hosmer v. Wallace, 97 U. S. 575, 24 L. Ed. 1130; Quinby v. Conlan, 104 U. S. 421, 26 L. Ed. 800. Atherton v. Fowler above, involved a question of the right to pre-empt lands, the possession of which was held under a Mexican grant which had been adjudged void, and the land declared to be a part of the public domain. After such adjudication numerous persons who had previously no interest in, claim to, or possession of any part of the land forcibly entered upon it without consent of those in possession, dispossessed them, and built upon and cultivated parts of the land under pretense of establishing a right to pre-empt the several parts so seized by them. When the land was restored to the public domain and became subject to public entry it was in possession of those who had settled upon it under the Mexican grant and had erected dwellings upon and otherwise improved it. In speaking of those claiming it under the invalid grant, Mr. Justice Miller said:

"Unless some reason is shown, not found in this record, these (the persons in possession under the Mexican title) were the persons entitled to make pre-emption, and no one else. But, supposing they were not? Does the policy of the pre-emption law authorize a stranger to thrust these men out of their homes, seize their improvements, and settle exactly where they settled, and by these acts acquire the initiatory right of pre-emption? The generosity by which Congress gave the settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. The right to make a settlement was to be exercised on unsettled land; to make improvements on unimproved land. To erect a dwelling house did not mean to seize some other man's dwelling. It had reference to vacant land, to unimproved land; and it would have shocked the moral sense of the men who passed these laws, if they had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the pubic lands by trespass,

by violence, by robbery, by acts leading to homicides, and other crimes of less moral turpitude. * * * In the case of Frisbie v. Whitney, before mentioned, this court said that, while it was not necessary to decide it, there were serious difficulties in regard to complainant's right to make a valid pre-emption by a forcible intrusion upon land cultivated, inclosed, and peaceably occupied by another man. In the present case, we are met with that question directly in our way, and we are of opinion that it cannot be done. It follows that the defendants could not have made any lawful entry on the lands, * * * in this case; that no law existed which gave them any right to make such an entry; that they were naked trespassers, making an unwarranted intrusion upon the inclosure of another—an inclosure and occupation of years, in which time and labor and money had been expended—and that in such a wrongful attempt to seize the fruits of other men's labor there could be no bona fide claim of right whatever. The instruction of the court that this could be done, founded on an erroneous view of the pre-emption law, was itself erroneous, and the judgment founded on it must be reversed."

In Hosmer v. Wallace, 97 U. S. 575–579, 24 L. Ed. 1130, it is said:

"To create a right of pre-emption there must be settlement, inhabitation, and improvement by the pre-emptor, conditions which cannot be met when the land is in the occupancy of another. Settlement, inhabitation, and improvement of one piece of land can confer no rights to another adjacent to it, which at the commencement of the settlement is in the possession and use of others, though upon a subsequent survey by the government it prove to be part of the same sectional subdivision. Under the pre-emption laws * * * the right to make a settlement is to be exercised on unsettled land; the right to make improvements is to be exercised on unimproved land; and the right to erect a dwelling house is to be exercised on vacant land; none of these things can be done on land when it is occupied and used by others."

See also, Quinby v. Conlan, 104 U. S. 421, 26 L. Ed. 800; Haws v. Vitoria Mining Co., 160 U. S. 303–319, 16 Sup. Ct. 282, 40 L. Ed. 436.

The defendant's remote grantor moved with his family upon the land in suit in the spring of 1884; erected small buildings, and resided thereon until he contracted for its purchase in 1887. The land was then unoccupied, and the right to it in litigation between the two railroad companies, each claiming it under the act of May 12, 1864. In June, 1887, after the settlement of that litigation and the land had been allotted to the Sioux City Company, he made a contract with that company for its purchase, and continued to reside upon it under that contract until December 7, 1888, when he sold it to Larson defendant's immediate grantor, who at once entered into possession, made further improvements and continued in possession until September, 1894, when he sold it to the defendant. Defendant immediately took possession, made other improvements, including a dwelling house, and continued to reside upon the land, except for a short time in February, 1896, until after he obtained his patent from the government in February, 1901. After the title of the railroad company was extinguished in 1895, he applied to the proper local land office, in compliance with the order of the Land Department, to purchase it under the adjustment act of March 3, 1887. The local land office awarded it to him under that act, but the Commissioner of the General Land Office held that he was not entitled to it thereunder, but was entitled to enter it as a homestead. The Secretary of the Interior upon appeal reversed the decision of the commissoner and affirmed that of

the local land office. The government price of the land was then paid to the United States by the railroad company for the benefit of the defendant, and a patent was duly issued to him therefor. If by reason of his prior settlement upon, and improvement of, this land (it being within the common indemnity limits of both roads) the defendant was entitled to enter it as a homestead, a question not necessary to now determine, the fact that a patent was issued to him upon other grounds would not invalidate his title, nor entitle a stranger to deprive him thereof. So long as the United States do not complain his title should be upheld. Cooper v. Roberts, 18 How. 173, 182, 15 L. Ed. 338; Field v. Seabury, 19 How. 323–330, 15 L. Ed. 650, 655; Deweese v. Reinhard, 61 Fed. 777–780, 10 C. C. A. 55.

Complainant never settled upon the land, his right to enter it as a homestead has never been recognized by the Land Department, and his unlawful attempt to intrude upon the defendant's prior peaceable possession in February, 1896, after the title of the railroad company was extinguished in October, 1895, gives him no right thereto. The local land office and the Commissioner of the General Land Office so adjudged, he prosecuted no appeal from the decision of the latter, and that decision is final and conclusive upon all questions of priority of entry and other questions of fact in the absence of fraud or mistake, neither of which is alleged nor shown. Vance v. Burbank, 101 U. S. 514–519, 25 L. Ed. 929; Smelting Co. v. Kemp, 104 U. S. 636, 640, 26 L. Ed. 875; Moore v. Robbins, 96 U. S. 530–535, 24 L. Ed. 848; De Cambra v. Rogers, 189 U. S. 119–122, 23 Sup. Ct. 519, 47 L. Ed. 734. Knowing that defendant was in possession of the land and making improvements thereon, claiming to own the same, he acquiesced in the decision of the Land Department for six years, and then comes into a court of equity asking that the land be awarded to him with the improvements placed thereon by the defendant. He is not entitled to such relief. United States v. California Land Co., 146 U. S. 31–43–5, 13 Sup. Ct. 458, 37 L. Ed. 354; United States v. Detroit Timber Co., 131 Fed. 668–676, 57 C. C. A. 1, affirmed 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; Gertgens v. O'Connor, 191 U. S. 237–246, 24 Sup. Ct. 94, 48 L. Ed. 163; Deweese v. Reinhard, 61 Fed. 777, 10 C. C. A. 55; Hartmann v. Warren, 76 Fed. 157–163, 22 C. C. A. 30; Germania Iron Co. v. James, 89 Fed. 811, 32 C. C. A. 348; Linkswiller v. Schneider (C. C.) 95 Fed. 203.

Other questions are presented and fully argued by counsel, but they need not be considered, for the conclusion is that complainant has shown no equities that entitled him to the land and that the bill should be dismissed at his costs. It is accordingly so ordered.