## LINEBECK v. VOS.

### (Circuit Court, N. D. Iowa, W. D.  April 1, 1908.)

### No. 265.

1. PUBLIC LANDS—HOMESTEAD ENTRY—POSSESSION BY OTHERS.

Complainant could not rightfully initiate a homestead right to public land in possession of other citizens of the United States qualified to hold the land under the homestead or other laws of the United States, who had filed in the local land office notice of their intention to claim the land under such laws.

[Ed. Note.—Rights acquired by homestead settlements and entries on public lands, see note to McCune v. Essig, 59 C. C. A. 434.]

2. SAME—EFFECT OF APPLICATION—RIGHT TO SUE.

Complainant's application to so enter the land gave him no interest in or right thereto which would enable him to maintain an action to recover possession against the assignee of the prior entryman.

3. SAME—ENTRY OF PATENTED LAND.

An attempt to enter lands under the homestead laws after the lands had been patented to prior entrymen did not confer any interest therein, the land having been withdrawn by the patent from the jurisdiction of the Land Department.

In Equity. On final hearing. The land involved in this suit is the S. E. ¼ of Sec. No. 29, Tp. 96, R. 42, in O'Brien county, this state, and is a part of the 85,457.41 acres patented to the state of Iowa under the act of Congress of May 12, 1864, c. 84, 13 Stat. 72, for the benefit of the Sioux City & St. Paul Railroad Company, but never patented to that company, for the reasons stated in Sioux City & St. Paul R. R. Co. v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177.

J. A. Miller, for complainant.
W. P. Briggs and A. C. Parker, for defendant.

REED, District Judge. The facts regarding the possession and occupancy of this land are: On August 27, 1887, John Brokaw made a contract with the Sioux City & St. Paul Railroad Company for its purchase, agreeing to pay therefor $2,080 in 10 annual installments, which was then its full market value. He had been in possession of the land prior thereto and continued to remain in possession after making such contract. December 19, 1887, he assigned his contract of purchase to W. B. Bowne, and W. H. Sleeper for $230 which they paid to him in cash, and in addition assumed and agreed to pay to the railroad company $2,000, the amount then owing to it upon the contract of purchase. They at once took possession of the land, made valuable improvements thereon, and continued in the open and undisturbed possession of it until October 20, 1902, when they sold it to the defendant Vos, who in good faith and without actual notice of any defect in the title paid and agreed to pay for it $10,160, that being its then fair value. Defendant Vos at once took possession, and has remained in the open, continuous and undisturbed possession thereof ever since. January 27, 1896, pursuant to the order of the local

land office of November 18, 1895 (see Harvey v. Holles, 160 Fed. 531), Bowne and Sleeper filed in that office notice of their intention to claim the land under the act of March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595). On the same date complainant filed a notice of his intention to claim it under the same act, but upon what he based his claim does not appear. February 27, 1896, the date fixed upon which the land would be subject to disposal by the United States, complainant made application to enter it as a homestead, and withdrew his claim to it under the act of March 3, 1887. Others also applied to enter it as a homestead. Upon a hearing of these several claims the local land office on May 8, 1896, rejected the claim of Bowne and Sleeper, and awarded the land to complainant upon his homestead application. Upon appeal by Bowne and Sleeper and others, the Commissioner of the General Land Office August 7, 1899, reversed the decision of the local land office, and held that complainant had never settled upon the land, and was not entitled to enter it as a homestead; that Brokaw or his assignees, Bowne and Sleeper, had been in the open and undisturbed possession of the land under the contract of purchase from the railroad company since the date of that contract, and awarded it to Bowne and Sleeper under the act of March 3, 1887. Complainant did not appeal from this decision, but other parties interested in the controversy did so appeal to the Secretary of the Interior, who on November 2, 1900, ordered a rehearing of the controversy before the local land office as to parties other than complainant and in his decision made this order:

"In the further proceedings in each of these cases all claimants who have heretofore become eliminated from the controversy by reason of their failure to appeal from a decision adverse to them will be considered as still elimi nated and in no wise interested in the controversy."

In compliance with this order a rehearing was had before the local land office March 11, 1902. April 11, 1902, that office awarded the land to Bowne and Sleeper, under the act of March 3, 1887. The complainant was not notified of the rehearing, and took no appeal from this decision. The local land office certified the facts and its decision upon the rehearing to the Commissioner of the General Land Office, who on June 28, 1902, affirmed the decision. No appeal was ever taken from such decision of the Commissioner. July 29, 1902, a patent was duly issued to Bowne and Sleeper upon the payment for them of $400, the government price of the land, which amount the United States have ever since retained. Bowne and Sleeper were each citizens of the United States and qualified to enter and hold land under the homestead or other laws of the United States. August 6, 1904, after the decision of the Supreme Court in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083, the complainant again made application to the local land office to enter the land as a homestead, which application was rejected upon the ground that the land had been patented by the United States, and was no longer within the jurisdiction of the Land Department. On appeals by complainant this decision was affirmed by the Commissioner of the General Land Office and the Secretary of the Interior, respectively.

No notice of these proceedings was ever given to the defendants, and they had no knowledge thereof until the commencement of this suit, which was September 29, 1905. It does not appear that complainant was ever upon this land; and the findings of the Land Department that he had never settled upon it, and that Brokaw and Bowne and Sleeper had been in the open, continuous and undisturbed possession thereof from August 27, 1887, until the patent was issued to Bowne and Sleeper in July, 1902, are conclusive upon those questions of fact. The complainant could not therefore rightly initiate a homestead right to the land while it was so in possession of Bowne and Sleeper. Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732; Hosmer v. Wallace, 97 U. S. 575, 24 L. Ed. 1130; Harvey v. Holles, 160 Fed. 531. And his application to so enter it gave him no interest in or right to the land that will enable him to maintain this suit. Frisbie v. Whitney, 9 Wall. 187, 193, 19 L. Ed. 668; The Yosemite Valley Case, 15 Wall. 77, 21 L. Ed. 82; Deweese v. Reinhard, 61 Fed. 777, 10 C. C. A. 55; Hartman v. Warren, 76 Fed. 157–163, 22 C. C. A. 30; Norton v. Evans, 82 Fed. 804, 27 C. C. A. 168. In the last-named case the complainant alleged that he sought to enter the land as a homestead prior to the act of March 3, 1887, but was prevented from so doing by wrongful acts of the defendant, and that he thereby acquired a vested interest in the land, which could not be taken from him. But it was held by the Court of Appeals, this circuit, Mr. Justice Brewer delivering the opinion, that even if he had been allowed to make the entry that would not have given him a vested interest in the land as against the United States. The attempt of complainant to enter the land as a homestead after it had been patented to Bowne and Sleeper clearly does not clothe him with any interest therein, for the land was not then within the jurisdiction of the Land Department. Moore v. Robbins, 96 U. S. 530–532, 24 L. Ed. 848; United States v. Schurz, 102 U. S. 378–396, 26 L. Ed. 167; Bicknell v. Comstock, 113 U. S. 149–151, 5 Sup. Ct. 399, 28 L. Ed. 962; Deweese v. Reinhard, 61 Fed. 777, 10 C. C. A. 55.

In Deweese v. Reinhard, Judge Thayer, for the Court of Appeals, this circuit, said:

"It will be found, we think, on a critical examination of all the federal adjudications, that in no case has a person who had merely an equitable claim to a tract of land as yet been allowed to maintain a bill to cancel a patent, or to quiet his title, as against an outstanding patent issued to a third party for the same land, or to have the patentee adjudged to be a trustee of the legal title, unless the equitable title asserted by the complainant had its origin in a settlement made upon the land before the patent was issued, and before the patentee had done any act with a view of appropriating the property and securing a patent therefor. In no case does it appear that a bill of the present nature has been successfully prosecuted by a claimant whose rights had their origin years after the government had parted with the legal title."

This conflicts with nothing that is held in Knepper v. Sands, for there the homestead rights of Sands were initiated long before Mrs. Knepper made her contract with the Sioux City Company for the land. Here, Bowne and Sleeper had made valuable improvements upon, and were in actual possession of, the land when complainant first applied to enter it as a homestead. A patent had been issued to them by the

government, and they had sold the land in good faith to defendant before he next applied to enter it. He is simply speculating, or taking the chances, upon a supposed defect in the title of the defendant. Equity does not regard with favor such attempts, and should not permit them to succeed.

Complainant cites the cases of Ostrom and Runger v. Wood (C. C.) 140 Fed. 294, as sustaining his right to the land. In the Runger Case the land was unoccupied when he made his homestead settlement upon it in the spring of 1888. He was in possession thereof at the time Wood bought of the railroad company and afterwards remained in possession, and in the litigation between him and Wood over such possession after Wood's purchase in October, 1888, the possession was awarded to him by the state courts. In the Ostrom Case possession was taken by Ostrom under an agreement with Wood for the purpose of enabling him (Ostrom) to make a homestead settlement upon the land. Neither therefore unlawfully intruded upon the prior possession of Wood, if in fact Wood was ever in possession. In neither case was any question remotely suggested upon the hearing that plaintiffs, or either of them, had unlawfully intruded upon the prior possession of Wood, and no such question was considered or determined in either of the cases.

The conclusion therefore is that the bill should be dismissed at complainant's costs, without prejudice to any rights of the United States.

It is accordingly so ordered.