OREGON TRUNK LINE, Inc., v. DESCHUTES R. CO.

(Circuit Court, D. Oregon. August 24, 1909.)

No. 3,531.

1. PUBLIC LANDS (§ 92*)—GRANT OF RIGHT OF WAY TO RAILROADS—VESTING OF TITLE.

Under Act March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), granting right of way through the public lands to any railroad company duly organized which shall have filed with the Secretary of the In-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

terior a copy of its articles of incorporation and proofs of its due organization, and providing that any company desiring to secure the benefits of the act shall within 12 months after the location of any section of its line, if the land is surveyed, file with the register of the local land office a profile of its road, "and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way," the approval of the map showing such profile is equivalent to a patent, and vests in the corporation title to the definite right of way shown thereon. Such title, however, dates from the time of such approval, and does not relate back to the date of the filing of the articles of incorporation or to the time of survey, and, as between two companies each seeking to secure the same right of way in whole or in part, the one whose map is first approved obtains the title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 276; Dec. Dig. § 92.*]

2. PUBLIC LANDS (§ 92*)—GRANT OF RIGHT OF WAY TO RAILROADS—RIGHT TO ATTACK.

A railroad company cannot attack the title of another company to a right of way over the public lands, confirmed to it by the Secretary of the Interior under the statute, unless it shows that at the time of the grant it had itself an interest in such right of way, and was lawfully entitled to it instead of the grantee.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 92.*]

In Equity. On cross-motions for preliminary injunctions.

Charles H. Carey and James B. Kerr, for complainant.
W. W. Cotton and Zera Snow, for cross-complainant.

BEAN, District Judge. This is a contest between two railroad companies for the possession of and the right to build a railroad on a strip of land 200 feet wide and about 20 miles long through the public lands of the United States on the east side of the upper Deschutes river, in this state, and each company is asking for a preliminary restraining order against the other. Both claim the right to occupy the land in question under Act Cong. March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), "granting to railroads the right of way through the public lands of the United States." The first section of this act provides:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road."

By the second section it is declared that:

"Any railroad company whose right of way or whose track or roadbed upon such right of way, passes through any canyon, pass or defile, shall not prevent any other railroad company from the use and occupancy of the said canyon, pass or defile for the purposes of its road, in common with the road first located or the crossing of other railroads at grade."

The third section is not pertinent to any question involved in this case; and the fourth provides:

"That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its road; and upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section the rights herein granted shall be forfeited as to any such uncompleted section of said road."

By the fifth section certain lands not material here are excepted from the operation of the act. According to the decisions of the Supreme Court of the United States, a railroad company, copies of whose articles of incorporation and due proofs of organization have been. filed in the proper office, and approved by the Secretary of the Interior, becomes a grantee, entitled to take under the law referred to, but no title passes to it to any definite part of the public domain until its road is actually constructed or a map or profile thereof filed in the local land office, and approved by the Secretary of the Interior, thus fixing the boundaries of the grant and the title dates from that time. Jamestown & N. R. R. Co. v. Jones, 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed. 698; Minneapolis, St. P. & S. Ste. M. Ry. v. Doughty, 208 U. S. 251, 28 Sup. Ct. 291, 52 L. Ed. 474. By filing copies of the articles of incorporation and due proofs of organization a corporation becomes qualified to take, but it is the actual construction of the road or the approval by the Secretary of the Interior of a map showing its proposed line which gives it title to any definite area of land. A corporation which desires to secure the benefit of the act must not only file copies of its articles of incorporation and due proofs of organization with the Secretary of the Interior, but it must within a specified time thereafter file with the register of the local land office a map or profile of its route, and, upon the approval thereof by the Secretary of the Interior, the statute says the same shall be noted upon the plats in the land office, and "thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way." The approval of the map is therefore the act which vests in the corporation title to a definite right of way over the public lands for a road thereafter to be constructed. Such approval is equivalent to a conveyance or patent from the government for the route delineated on the plat, and it cannot subsequently be revoked by the Secretary or his successor in office, nor can it be set aside or vacated by a court except for reasons that would justify such relief in case of a patent. Noble v. Union River Logging R. R., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123.

Now, applying this settled construction of the act of 1875 to the case in hand, the duty of the court is clear. The plaintiff corporation was organized February 19, 1906, under the laws of the state of Nevada, among other things, to build and operate a railroad "from a point on the Columbia river in the state of Oregon at or near its confluence with the Deschutes river, southerly along the course of said Deschutes river to central Oregon; the length of such road as near

as may be to be 250 miles." It filed copies of its articles of incorporation and due proofs of organization with the Secretary of the Interior April 12, 1906, as alleged in the bill of complaint, or May 14, 1906, as stated in the answer, and the same were approved by that officer on June 4th following. On August 16, 1906, it filed in the local land office a map or profile of its proposed road, beginning 40 miles south of the mouth of the Deschutes river, and extending southerly 60 miles, which includes the disputed territory, and this map was duly approved by the Secretary of the Interior on July 21, 1908.

The defendant is an Oregon corporation, organized on February 2, 1906, to build and operate a line of railroad from a point on the line of the Oregon Railroad & Navigation Company at or near the mouth of the Deschutes in a general southerly direction up the valley of the Deschutes to the town of Bend. On February 10, 1906, it filed copies of its articles of incorporation and due proofs of organization with the Secretary of the Interior, and the same were approved by that officer on March 1, 1906. It thereafter made a survey of the first 40 miles of its road south of the mouth of the Deschutes, and filed maps thereof in the proper land office in March and May, 1906, but, owing to objections thereto by the reclamation service, the maps were returned to the defendant. It thereafter made some changes in its survey, and filed new maps of the 40-mile section, which on June 21, 1909, were approved by the Secretary of the Interior contemporaneous with a map filed by the plaintiff covering a part of the same route. No survey, however, was made by the defendant or map filed of its line south of the 40-mile post prior to the approval of the plaintiff's map for that part of its lines. Between August 29, 1908, and October 9th of that year, the defendant surveyed its line south of the 40-mile post for about 60 miles, a part of which, it is alleged, is over and upon the route formerly located by the plaintiff, and delineated upon its approved map, and maps thereof have been filed, but not yet approved by the Secretary of the Interior.

It thus appears that the plaintiff has an approved map of a line over the disputed territory, which, under the ruling of the Supreme Court, vests in it a title to a right of way over the public lands, and the defendant has not. The plaintiff's map was approved and the right of way delineated thereon segregated from the public domain, and the title in effect vested in it before the defendant company commenced to survey its line over the disputed territory. The plaintiff, therefore, has an apparently valid title to the land in dispute, while defendant has no rights therein. The defendant insists, however, (1) that the approval of plaintiff's map by the Secretary of the Interior was invalid and passed no title, because the plaintiff, being a Nevada corporation, organized under a law which prohibits it from building or owning or operating a railroad in the state of its creation cannot do so in Oregon, and therefore had no capacity to take the grant in question; (2) that the survey of the line delineated on the plaintiff's map as shown thereon was made prior to the filing of a copy of its articles of incorporation and due proofs of organization with the Secretary of the Interior, and was not in compliance with the provisions of the act of 1875, and the Secretary had no power or authority to approve the map for that

reason; and (3) that the statement on the face of the map that the survey was made after the organization of the plaintiff company is false and untrue, as the survey was, in fact, made prior to such organization, and therefore the Secretary of the Interior was deceived and misled, and his approval of the map procured by fraud. The defendant, however, is not in a position to raise any of these questions. It had no title or interest in the property at the time the map was approved which was affected thereby. It was a stranger to the proceedings and the title. The Secretary of the Interior had jurisdiction and authority to dispose of the public domain, and his approval of the plaintiff's map was equivalent to the issuance of a patent to the land, and cannot be challenged by one who is not in privity with the government, or who had not acquired a right to be preferred in the acquisition of the land before such approval. "To enable one to attack a patent from the government," says Mr. Justice McKenna, "he must show that he himself is entitled to it. It is not sufficient for him to show that there may have been error in adjudging the title to the patentee. He must show that by the law properly administered the title should have been awarded to him." Duluth & Iron Range R. R. v. Roy, 173 U. S. 590, 19 Sup. Ct. 550, 43 L. Ed. 820. See, also, Deweese v. Reinhard, 61 Fed. 777, 10 C. C. A. 55; Hartman v. Warren, 76 Fed. 157, 22 C. C. A. 30.

It is argued on behalf of the defendant that its title to the right of way over the public lands along the route described in its articles of incorporation was initiated at the time copies thereof and due proofs of organization were filed with the Secretary of the Interior, and approved by him, and, if regularly and diligently followed up, gave it a right to occupy any part of the public domain along the proposed route for railroad purposes as against a company subsequently becoming a qualified grantee under the act of Congress by filing copies of its articles of incorporation and due proofs of organization. But this position is contrary to the doctrine of the Supreme Court in the Doughty Case. It was there contended by the railroad company that the approval of its map by the Secretary of the Interior related back to the time of the actual survey of the line on the ground, and that one who settled on the land after such survey and before the approval of the map took subject to such right of way. The court held that the approval of the map did not relate back to the survey, but that the right of the company attached from the date of the approval only, and that the homestead settlement took preference. In that case the survey had been made by the railroad company before the land was settled upon and the map of location was subsequently duly approved, while here no survey was made by the defendant until after the approval of the plaintiff's map, and the title had passed to it, and the defendant's map has not yet been approved, so that the facts in the Doughty Case were more favorable to the railroad company than in the present one. I am clear, therefore, that the plaintiff is entitled to the relief prayed for. It is the legal owner as against the defendant of the property in question, and entitled to its possession and enjoyment. The defendant has no right or claim thereto, and no reason has been shown why the court should disregard the plaintiff's title and al-

low the property to be occupied or improved by one having no interest therein.

The defendant has filed a cross-bill, setting up its organization, averring the steps that it has taken in the survey, location, and construction of its road, attacking the validity and legality of the plaintiff corporation, and its right to hold, own, or operate a railroad in this state, or hold or own a right of way therefor, and the validity of the proceedings before the Secretary of the Interior in the matter of the approval of its map, and asking that the plaintiff be enjoined from proceeding with the construction of its road over the disputed section pending this litigation, but I can see no reason, either legal or equitable, why it is entitled to any such relief. It has no title to the property in question, and none of its rights will be invaded by the construction of a railroad over same by the plaintiff. Each of the parties is now actually engaged, apparently in good faith, in building its road from the mouth of the Deschutes to eastern Oregon, and neither should be permitted to obstruct the work of the other. The plaintiff's ownership and right to occupy the disputed territory does not prevent the defendant from proceeding with its road. If the plaintiff's road as delineated on its approved map is through a canyon, pass, or defile, it cannot, on account of any priority it secured by reason of such approval, prevent the defendant from using or occupying the same upon such terms and conditions as may be adjudged just and equitable. Railway Co. v. Alling, 99 U. S. 463, 25 L. Ed. 438. It appeared from the affidavit of Mr. Boschke, chief engineer of the defendant company, that for more than 100 miles from its mouth the Deschutes river follows through a rough and rolling plateau, a depth of from 100 to 2,000 feet below the level of the surrounding country; that the banks on either side are uniformly steep and precipitous, and the same character on both sides; and "that for the purpose of railroad construction as considered not only from a construction standpoint, but from a standpoint of the expense of construction, and from the standpoint of expense of maintenance and operation, there is no substantial choice or difference between the banks of said river, but that either bank affords as favorable location as the other for said purposes." There is therefore room for both of these roads, and it would seem that each can be built without conflicting with or encroaching upon the rights of the other.

It is claimed that the route of the plaintiff's railroad as delineated on its approved map and shown by the field notes filed therewith is so indefinite and uncertain that it will be impossible for the defendant to comply with any injunction order that may be issued herein. This matter cannot be determined from the affidavits now on file. If the defendant should be unable to determine the location and boundaries of the premises which it is enjoined from trespassing upon, it may report that fact to the court for further consideration.

Let a temporary injunction issue as prayed for in the bill.